IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

McClure Telephone Company,                                    Case No. 3:08CV2800

      Plaintiff

   v.                                                                              ORDER

AT&T Communications of Ohio, Inc.,
and Sprint Communications Company, L.P.,

      Defendant

     This is a case in which plaintiff, McClure Telephone Company [McClure], originally filed a state law collection claim against defendants AT&T Communications of Ohio [AT&T Ohio] and Sprint Communications Company L.P., [Sprint] in the Court of Common Pleas for Henry County, Ohio. Plaintiff seeks damages for AT&T Ohio's and Sprint's failure to pay it intrastate access charges under the state tariff it filed with the Ohio Public Utilities Commission [PUCO]. Asserting that plaintiff's claim arises under federal law, AT&T Ohio and Sprint removed the case to the United States District Court for the Northern District of Ohio.

     Pending is plaintiff's motion to remand and for an award of costs and attorney fees. [Doc. 11]. The parties agree that they are not diverse. McClure argues that its claim belongs in state court because it seeks relief under a purely state-based cause of action. AT&T Ohio and Sprint disagree, and contend that McClure's claim arises under federal law, and falls under the "artful pleading" and "complete preemption" exceptions to the well-pleaded complaint rule. In the alternative, AT&T Ohio and Sprint argue that even if McClure has pled a state-law claim, that claim raises a substantial and disputed issue of federal law.

1

For the reasons discussed below, McClure's motion to remand and request for costs and attorney fees shall be denied.

**Background**

McClure is a small telephone company based in McClure, Ohio, with local exchange facilities. It allows long-distance carriers such as AT&T Ohio and Sprint to use its local exchange facilities to complete interstate and international calls.

The Communications Act of 1934, 47 U.S.C.A. § 151 *et seq.* [the "Act"], regulates interstate and international communications services. It grants the Federal Communications Commission [FCC] authority to adopt implementing regulations.

The FCC established the "access-charge regime" under which long distance carriers pay "access charges" to local carriers that originate or terminate interstate and international calls. Thus, when a Sprint [or an AT&T] long-distance customer in Iowa places a call that terminates to an end-user customer of plaintiff in McClure, Ohio, Sprint [or AT&T] pays plaintiff a "terminating access" charge, governed by federal law. States have similar regimes for entirely intrastate long-distance calls.

McClure filed both a state tariff with the Public Utilities Commission of Ohio [PUCO] and a federal tariff with the FCC. Ohio law governs the state tariff and federal law governs the FCC tariff. McClure's rates for intrastate access are limited to those approved by the PUCO and contained in its PUCO-approved tariff.

McClure and other telephone companies known as "Calling Service Partners" offered Ohio residents the ability to make low-cost international calls if they dialed a telephone number associated

2

with McClure.[1] After dialing the intrastate long distance number to McClure, a customer would receive a prompt to enter the international telephone number he wished to call, and a continuous connection to that international telephone number was established.

McClure treats the first part of that international call - the connection from the Ohio caller to the McClure telephone number - as a separate intrastate call, and has billed AT&T Ohio and Sprint intrastate access charges based on state tariffs, instead of international charges based on federal law and tariffs filed under federal law.

AT&T Ohio and Sprint filed a Joint Notice of Removal, seeking to remove the case to federal court. In response, McClure filed the pending motion to remand to state court. McClure argues its collection action arises under Ohio state law and that no federal claim appears on the face of its well-pleaded complaint. It also posits that its state law claim raises no substantial federal question. It argues that courts have rejected end-to-end jurisdictional analysis, and therefore, no basis exists for AT&T Ohio's and Sprint's claim that the calls in question are international. McClure

---

[1]In McClure's motion to remand, McClure states that AT&T Ohio and Sprint make "wild allegations concerning their supposed fraud investigations into traffic pumping and international calling services provided by some unnamed company other than McClure." [Doc. 11]. Rather than denying these statements provided in declarations submitted to this court [Doc. 1, Exh. 2, 3], McClure simply states that courts have repudiated the "end-to-end jurisdictional analysis" relied on by defendants.

"District courts in our Circuit . . . [can] look beyond the pleadings to determine whether remand must occur." *Szymanski v. CSX Transp., Inc.*, 2006 WL 1561976, at *2 (N.D. Ohio). Since McClure does not refute AT&T Ohio's and Sprint's declarations regarding their assertion that the calls in question are the first leg of international calls, I accept defendants' declarations as true for purposes of the jurisdictional dispute. *See, e.g., Fowler v. Wyeth*, 2004 WL 3704897, at *4 (N.D. Fla) ("Once [the removing party] presented the declarations to the Court, Plaintiffs could not continue to rely upon their unsupported allegations in the complaint. Plaintiffs had to put forth specific evidence to refute the statements in the declarations.").

seeks costs and attorney fees for AT&T Ohio's and Sprint's purportedly baseless removal action.

According to AT&T Ohio and Sprint, the Communications Act of 1934 and regulations and tariffs adopted under it exclusively govern the provision of local transmission that constitutes one leg of an international [or interstate] long-distance call. AT&T Ohio and Sprint, therefore, contend that McClure's claim arises under federal law, and falls under the artful pleading and complete preemption exceptions to the well-pleaded complaint rule. In the alternative, they argue that even if I consider McClure's claim a state law claim, it necessarily raises a substantial and disputed federal issue, and falls under the "substantial federal question" exception to the well-pleaded complaint rule.

## Standard of Review

After removal, plaintiffs may bring a motion to remand to state court under 28 U.S.C. § 1447(c), which states,

> A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal. A certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The State court may thereupon proceed with such case.

## Discussion

I must grant McClure's motion to remand to state court if I find that no federal question jurisdiction exists over its claims. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("[A]bsent diversity of citizenship, federal question jurisdiction is required" for proper removal to federal court.").

4

Section 1331 establishes federal question jurisdiction. It states that "the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." I must look to the face of McClure's well-pleaded complaint to see if its claims arise under federal law. *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908).

A case "arises under" federal law when "a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 689-90 (2006) (citation omitted). Defendant's arguments or counterclaims cannot provide the basis for federal question jurisdiction. *See, e.g., Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc.*, 535 U.S. 826, 831 (2002).

Under the "artful pleading" doctrine, a plaintiff may not "avoid removal jurisdiction by artfully casting . . . essentially federal law claims as state-law claims." *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 560 (6th Cir. 2007). The complete preemption doctrine calls for removal "when a federal statute wholly displaces the state-law cause of action through complete pre-emption." *Id*.

Under the substantial federal question doctrine, "a state law cause of action may actually arise under federal law, even though Congress has not created a private right of action, if the vindication of a right under state law depends on the validity, construction, or effect of federal law." *Id*. at 565. According to the substantial federal question doctrine, removal is proper when "a state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal

5

and state judicial responsibilities." *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 314 (2005).

### 1. Did McClure Artfully Plead a Federal Law Claim as a State Law Claim?

A federal court, under the artful pleading doctrine, has jurisdiction "if a plaintiff has carefully drafted the complaint so as to avoid naming a federal statute as the basis for the claim, and the claim is in fact based on a federal statute. A defendant raising this doctrine may not rely on facts not alleged in the complaint." *Mikulski, supra*, 501 F.3d at 561 (citing *Caterpillar v. Williams*, 482 U.S. 386, 397 (1987)). Despite the prohibition on relying on facts not alleged in the complaint, as discussed *infra*, a plaintiff may not rely on unsupported allegations in the complaint after the defendant submits declarations. The plaintiff should refute the statements in the declarations. In fact, the artful pleading doctrine allows "the removal court . . . [to] look beyond the plaintiff's complaint to other materials in order to determine whether the real nature of the claim is federal regardless of plaintiff's characterization." *Phillips v. AT&T Wireless*, 2004 WL 1737385 (S.D. Iowa).

In *Caterpillar*, the Supreme Court held that the removing party could not argue that respondents should have pleaded a different set of facts that would have constituted a federal claim. In this case, however, AT&T Ohio and Sprint do not fault McClure for failing to plead an alternative set of facts that could have created a federal claim. They instead argue that McClure has left out facts in order to hide the true nature of the calls in question and to disguise its claim as a state law, rather than a federal law claim. McClure's failure to refute the facts outlined in the declarations presented by AT&T Ohio and Sprint officials only strengthens AT&T Ohio's and Sprint's arguments. McClure attempts to undermine the jurisdictional analysis AT&T Ohio and Sprint apply to those facts.

McClure seeks to recover intrastate access charges on phone calls placed by Ohio customers to a McClure facility that prompted the callers to enter an international number to complete an international call. McClure argues the first leg of these international calls constitute intrastate calls; it therefore bases its claim for recovery on state law, which governs intrastate calls.

AT&T Ohio and Sprint, however, assert that according to end-to-end jurisdictional analysis, the calls in question are international, and McClure's claim for recovery actually arises under federal law, not state law.

The Communications Act defines international and interstate communications. 47 U.S.C. § 153(h)(17) (a "foreign communication" is a "communication or transmission from or to any place in the United States or to or from a foreign country"); *id.*; § 153(h)(22)(an "interstate communication" is a "communication or transmission . . . from any State . . . to any other State").

The FCC, in implementing these statutory provisions, applies an "end-to-end jurisdictional analysis" to determine the jurisdictional nature of the calls. The FCC focuses on the "end points" of a call and considers the continuous path of communications beginning with the end point at the inception of a communication to the end point at its completion. *Nat'l Assoc. of Regulatory Utility Commissioners v. Federal Comm's Commission*, 746 F.2d 1492, 1498 - 99 (D.C. Cir. 1984). Applying that analysis to the present scheme, the end points of the calls in question are located in Ohio and in an international location. Since the end points of these calls do not exist intrastate, but rather internationally, end-to-end jurisdictional analysis would deem these calls international calls.

The D.C. Circuit, in *Nat'l Assoc. of Regulatory Utility Commissioners*, *supra*, 746 F.2d at 1498 - 99, explained,

> Purely intrastate facilities and services used to complete even a single interstate call may become subject to FCC regulation to the extent of their interstate use. Every

7

> court that has considered the matter has emphasized that the nature of the communications is determinative rather than the physical location of the facilities used. . . . Every court that has considered the matter . . . has held that the physically intrastate location of that service does not preclude FCC jurisdiction so long as the service is used for the completion of interstate communications. . . . The Communications Act thus explicitly creates FCC jurisdiction over all "facilities" and "services" used at any point in completing an interstate telephone call. On its face then, the Act defines the FCC's jurisdiction in terms of the interstate nature of a communication. The Act attaches no significance to the physical location of the facilities used.

*See also Bell Atlantic Tel. Cos. v. F.C.C.*, 206 F.3d 1, 4 (D.C. Cir. 2000) ("[T]he Commission . . . has traditionally used [end to end analysis] for jurisdictional purposes to determine whether particular traffic is interstate"); *Starpower Communications LLC v. F.C.C.*, 334 F.3d 1150, 1155 (D.C. Cir. 2003) (end to end analysis is appropriate for determining whether traffic is within federal or state jurisdiction); *In the Matter of Vonage Holdings Corp.*, 19 F.C.C. Rcd. 22404 ¶ 17 (2004) ("When a service's end points are in different states or between a state and a point outside the United States, the service is deemed a purely interstate service subject to the Commission's exclusive jurisdiction.").

McClure, in response, argues that the most recent court to address this issue, the D.C. Circuit in *Bell Atlantic*, rejected end-to-end jurisdictional analysis. The D.C. Circuit, however, did not repudiate this analysis. It merely held that such analysis did not necessarily apply to internet service providers.

In *Bell Atlantic*, the D.C. Circuit remanded the case to the FCC, finding the FCC did not adequately explain why it used end-to-end jurisdictional analysis to conclude that calls to internet service providers were not local, and therefore not subject to reciprocal compensation agreements. In *Bell Atlantic*, the D.C. Circuit affirmed the use of end-to- end jurisdictional analysis for traditional circuit switched networks.

The court acknowledged that "end-to-end analysis . . is one that [the Commission] has traditionally used to determine whether a call is within its interstate jurisdiction." *Bell Atlantic, supra,* 206 F.3d at 3. It found, however, that the internet did not fit the traditional categories to

8

which end-to-end jurisdictional analysis applied because it did not constitute a "conventional circuit switched network, which uses a single end to end path for each transmission." *Id*. at 4. Instead, the court explained that the internet "is a distributed packet switched network - information is split up into small chunks or packets that are individually routed through the most efficient path to their destination." *Id*.

The court thus found in *Bell Atlantic* that end-to-end jurisdictional analysis did not logically apply to internet service providers. The court did not however reject end-to-end jurisdictional analysis for traditional circuit switched networks. *See also In re High Cost Universal Service Support*, 2008 FCC LEXIS 7792, at ¶ 13 (Nov. 5, 2008) (declining to apply end-to-end jurisdictional analysis to internet service providers); *Global NAPS, Inc. v. Verizon New England, Inc.*, 444 F.3d 59 (1st Cir. 2006) (finding jurisdictional analysis did not apply to internet service provider connections).

According to end-to-end jurisdictional analysis, the calls in question are international calls, and not intrastate calls. As international calls, they fall under the jurisdiction of the FCC, and are governed by the Communications Act and federal tariffs. McClure's collection claim based on these international calls therefore arises under federal law. *See* 47 U.S.C. §§ 152(a); 153(17) (defining "foreign communication"); *In re Policies and Procedures Concerning Operator Service Access and Pay Tel. Compensation*, 8 F.C.C. Rcd. 2863, ¶ 6 (the Federal Communications Commission has "exclusive jurisdiction" over "international communications.").

### 2. Is McClure's Collection Claim Completely Preempted?

AT&T Ohio and Sprint also argue that removal is warranted based on the complete preemption doctrine. The Supreme Court has recognized complete preemption in only three

9

categories of cases: "Section 301 of the Labor Management Relations Act of 1947 (LMRA) . . .; ERISA . . .and the National Bank Act." *Mikulski, supra*, 501 F.3d at 563-64. In the present case, McClure refutes AT&T Ohio's and Sprint's complete preemption argument by repeatedly asserting that federal law does not completely preempt claims based on intrastate calls. Defendants have demonstrated, however, that the calls in question are international calls, subject to federal jurisdiction based on end- to- end jurisdictional analysis. The Act states that the FCC has exclusive jurisdiction over interstate and international communications, and a claim for recovery based on international calls arises under federal law.

McClure argues that I previously held the Federal Communications Act does not completely preempt all state law claims with respect to interstate communications. *Corporate Housing Systems, Inc. v. Cable & Wireless, Inc.*, 12 F. Supp. 2d 688, 693 (N.D. Ohio. 1998). In that case, I distinguished plaintiff's claim "from causes of action explicitly created under the Act" because plaintiff's claim rested "on obligations arising out of a private contract between two parties, not on duties and liabilities created and governed by the Act." *Id*.

The present case differs because it involves a collection action based on a federal tariff. Federal law governs suits to enforce federal tariffs. *See, e.g., Bryan v. Bellsouth Communications, Inc.*, 377 F.3d 424, 429 n.6 (4th Cir. 2004) ("[*Cahnmann's*] statement that suits to enforce or invalidate tariffs arise under federal law is beyond dispute and does not depend on any preemption theory"); *Cahnmann v. Sprint Corp.*, 133 F.3d 484, 488 (7th Cir. 1998) ("A tariff filed with a federal agency is the equivalent of a federal regulation, and so a suit to enforce it . . . arises under federal law."); *Fax Telecommunicaciones Inc. v. AT&T*, 138 F.3d 479, 488 (2d Cir. 1998) (finding that counterclaim seeking to collect payments due under a tariff filed with the FCC arose under

federal law. The Court stated, "these tariffs are not simply contracts; they have the force of federal law."); *Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*, 460 U.S. 533, 534-35 (1983) (suit to collect charges due under tariff governed by Interstate Communications Act gives rise to federal jurisdiction).

### 3. Substantial Federal Question Doctrine

AT&T Ohio and Sprint argue, in the alternative, that even if McClure has brought a state law claim, that claim necessarily raises substantial and disputed issues of federal law. Under the substantial federal question doctrine, federal jurisdiction exists over state law claims when:1) the state law claim necessarily raises a disputed federal issue; 2) the federal interest in the issue is substantial; and 3) the exercise of jurisdiction does not disturb any congressionally approved balance of federal and state judicial responsibilities. *Mikulski, supra*, 501 F.3d at 568 - 69.

### A. Does McClure's Claim Raise a Disputed Federal Issue ?

I have found that, based on end-to-end jurisdictional analysis, the calls in question are international calls, and a suit to collect charges assessed on these calls arises under federal law. AT&T Ohio and Sprint note, however, that even if I did not want to conclude the calls are international, the issue of whether or not they constitute intrastate or international calls raises a federal question and warrants federal jurisdiction under the substantial federal question doctrine.

For McClure to collect intrastate charges on phone calls that comprise the first leg of international calls, it must allege that the calls qualify as intrastate calls for jurisdictional purposes. The proper jurisdictional assessment of such calls, however, is a federal question. See 47 U.S.C. §§ 152, 153 (17) (defining "foreign communication); 153(22) (defining "interstate communication").

McClure disputes the contention that determining the jurisdiction of traffic amounts to a federal question. It argues that the FCC held "it lacks subject matter jurisdiction to determine the jurisdiction of traffic for purposes of billing the rates for intrastate access service contained in a state tariff." *LDDS Commc'ns v. United Tel. of Florida*, 15 FCC Rcd 4950, 4955 (2000). In LDDS, however, the FCC held that it had no jurisdiction over the matter because the "gravamen of LDDS's complaint, the retroactive adjustment of its intrastate access charges, presents an issue falling solely within the jurisdiction of the Florida Public Service Commission." *Id*. at 4955-56. The FCC did not hold that it lacked subject matter jurisdiction to determine the jurisdictional nature of the calls.

### B. Does McClure's Claim Raise a Substantial Federal Issue?

McClure argues that even if its state law claim raises federal law issues, these issues are not substantial and therefore do not warrant federal question jurisdiction. The Supreme Court has identified four aspects of a case or an issue that affect the substantiality of the federal interest in that case or issue:

> (1) whether the case includes a federal agency, and particularly, whether that agency's compliance with the federal statute is in dispute; (2) whether the federal question is important (i.e., not trivial); (3) whether a decision on the federal question will resolve the case (i.e., the federal question is not merely incidental to the outcome); and (4) whether a decision as to the federal question will control numerous other cases (i.e., the issue is not anomalous or isolated).

*See, e.g., Mikulski, supra*, 501 F.3d at 570.

Based on an analysis of these factors, McClure raises a substantial federal question. Whether the first leg of an international call that occurs intrastate constitutes an international call for jurisdictional purposes is an important federal issue. The answer determines whether such calls will fall under state or federal regulation, and whether other companies can create similar systems to inflate intrastate charges. The ability of carriers to enter arrangements where use of a second dial

12

tone makes international calls subject to intrastate-access charges at the mid-point of the call could undermine the FCC's federal compensation regime for interstate and international calls. Determining the appropriate jurisdiction for these calls will resolve the case, and will control other cases involving similar schemes.

### C. Can A Federal Forum Entertain McClure's Claim Without Disturbing Any Congressionally Approved Balance of Federal and State Judicial Responsibilities?

AT&T Ohio and Sprint argue that a federal forum can entertain McClure's claim without disturbing any congressionally approved balance of federal and state judicial responsibilities. According to AT&T Ohio and Sprint, the case raises two critical federal questions: whether international traffic is subject to intrastate charges and the meaning of the tariff term "terminates." These questions involve issues on which the FCC has ruled, the Act addresses and that have important consequences for federal law. No flood of similar cases would result, since federal courts already address these issues.

McClure argues that the history of the Act demonstrates that Congress intended to permit state laws and regulations governing intrastate tariffs. It insists that exercising federal jurisdiction over Ohio state law claims would disturb Congress' intent to authorize the states to regulate intrastate communications. They add that removing this case would lead to a flood of claims, because it would essentially entail removing a case to federal court due to the mere presence of a federal law issue.

McClure's argument fails to account for the fact that the calls on which it assesses intrastate charges constitute international, and not intrastate calls under end-to-end jurisdictional analysis. While McClure correctly describes congressional intent, its argument does not indicate

13

congressional intent regarding the first leg of international calls that occurs intrastate, and whether Congress intended for such calls to receive intrastate charges and fall under state jurisdiction. There is no evidence that placing this issue before federal courts will lead to a flood of similar cases.

Based on the substantial federal question doctrine therefore, AT&T Ohio and Sprint have shown that McClure's state law claim raises a federal law question, actually disputed and substantial, which a federal forum may resolve without disturbing any congressionally approved balance of power.

I find, therefore, that federal jurisdiction is warranted under the "artful pleading," "complete preemption" and alternatively, "substantial federal question" doctrines. End-to-end jurisdictional analysis applies to these calls, and under this analysis, the calls in question constitute international calls governed by federal law. Even if I held that McClure raises a state law claim, its claim depends on McClure showing that the calls on which it assesses intrastate charges are in fact intrastate calls. Determining the jurisdiction of the calls in question, however, raises a necessarily disputed and substantial question of federal law.

## Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT defendants' motion to remand [Doc. 11] be, and the same hereby is overruled. A scheduling conference is set for June 8, 2009 at 3:00 p.m.

So ordered.

s/James G. Carr
James G. Carr
Chief Judge